TAYLOR, Presiding Judge.
The appellant, Jerry W. Bailey, was convicted of the murder of his wife, a violation of § 13A-6-2, Code of Alabama 1975. He was sentenced to life imprisonment.
The state’s evidence tended to show that on August 27,1981, Mary Bailey, the appellant’s wife, was found face down in a pond in Covington County, Alabama. She had over a liter of water in her lungs. The victim was a school teacher. On the date that she drowned, she had planned to ride home from school with one of her co-workers. As they walked to the parking lot, she saw the appellant waiting for her.
The appellant testified that he drove to Sellers Pond so that he could take his daily walk. He said that the victim sat at a bench by the pond reading a paper while he walked. He testified that his wife was gone from the bench when he finished his walk. In his statement to the police, the appellant said that he looked around and saw his wife face down in the pond. Appel *352 lant further stated that he tried to revive her, but was unsuccessful. He said he then went to call the Red Level police station. At the time he made a statement to the police, the appellant had scratches on his neck. Appellant stated at trial that the reason he had the scratches was that he got them from trying to help the victim.
Several witnesses testified that the appellant and the victim were having marital problems. Evidence revealed that the appellant periodically sent flowers to a Sue Champion while the victim was still alive. The notes read, “love you” or “love you forever.”
Dr. Alfredo Paredes, a forensic pathologist, testified as to the cause of death. He also stated that the victim took medication for dizziness and that if a person fainted he would fall where he was standing. Dr. Paredes’s testimony, however, was based on an autopsy report prepared by Dr. Thomas Gilchrist. This report, when reviewed by Dr. Paredes, contained Dr. Gilchrist’s conclusions as to the victim’s cause of death.
Police Investigator Robert Johns testified that he arrived at Sellers Pond shortly after the appellant called the police. Johns searched the area and checked the road that the appellant said he had walked. That witness said that the road was sandy dirt, which would tend to leave distinctive footprints; however, he said no footprints were present. One shoe of the victim and her eyeglasses were recovered when an attempt was made to drain the pond.
There were four insurance policies on the victim’s life. The appellant received a payment of $27,406 in 1981 and $21,729 in 1982. The appellant also received $12,211 from the State Teachers’ Retirement System.
Since appellant’s conviction must be reversed, we will address only that issue which requires reversal.
I
Appellant argues that the court erred in allowing Dr. Paredes to express an opinion based on the opinion of another.
During the direct examination of Dr. Pa-redes, the following occurred:
“Q: All right sir, so you have reviewed a copy, an exact copy of state’s exhibit 18, this autopsy report, prepared by Dr. Thomas Gilchist, is that correct?
“A: That's correct.
“Q: And based on the observations in this report and based on your own training and experience, do you have an opinion as to the cause of Mary Bailey’s death?
“MR. LINDSEY: Just, if you will please, sir, state whether you do or don’t?
“A: Well, I do believe that Mrs. Bailey died of drowning.
“MR. LINDSEY: She just asked you if you have an opinion.
“THE COURT: She asked you only if you had an opinion.
“DR. PAREDES: Yes, sir I do have an opinion.
“Q: And what is that opinion?
“MR. LINDSEY: We object.
“THE COURT: Overruled.
“MR. LINDSEY: We except. There is no predicate laid for the introduction at this point.
“THE COURT: You may give your opinion.
“Q: What is your opinion?
“A: In my opinion based on the examination and reading of this report Mrs. Bailey died of drowning — excuse me— asphyxia secondary to drowning.
“MR. LINDSEY: Excuse me?
“DR. PAREDES: Asphyxia; drowning.
“THE COURT: Asphyxia secondary to drowning.
“Q: From based on the data in this report could you determine whether or not Mrs. Bailey was alive or dead when she entered the water?
“MR. LINDSEY: We object if the court please.
“THE COURT: I will let him say whether he can or not.
“MR. LINDSEY: May I state the basis for my objection, if His Honor, please?
“THE COURT: Yes.
“MR. LINDSEY: Well, go ahead and say if you can or not.
*353 BAILEY v. STATE Cite as 590 So.2d 351 (AIa.Cr.App. 1990) Ala.
“Q: Can you determine from the findings in that report whether or not she was alive or dead at the time the body entered the water?
“A: I cannot determine—
“MR. LINDSEY: Just say if you can or not?
“DR. PAREDES: I would like to elaborate my answer, Your Honor?
“MR. LINDSEY: Just answer the question.
“THE COURT: I think she asked you based on that report only, and that is what you have reviewed, can you say with a medical certainty whether she was alive or dead when she went in the water?
“A: I cannot say precisely that she was alive or dead when she went into the water.
“Q: Did you find anything in the report to indicate that she was alive when she went into the water?
“MR. LINDSEY: We object if the court please.
“THE COURT: Overruled.
“MR. LINDSEY: We except.
“A: There is indication that she may have been alive by the fact that she had a lot of water in the stomach; she had a liter of water in the stomach. And in order to swallow a liter of water in the stomach you have to be basically struggling to swallow that and so forth. And she also had a lot of fluids in the lungs which indicates to me that she may have been alive when she went into the water. Now, how was she alive in the sense was she conscious or unconscious I do not know that.”
Dr. Paredes was asked to state an opinion partly based on conclusions made in the autopsy report of Dr. Gilchist. “[Ojpinion testimony, offered by an expert witness, may be based upon facts within his knowledge, or he may give an opinion based upon a hypothetical question, based upon facts already in evidence, or evidence to be subsequently admitted.” Thomas v. State, 455 So.2d 278, 281 (Ala.Cr.App.1984).
The Alabama courts have long held that it is error to allow an expert witness to testify as to his opinion when the witness is basing his opinion on the opinion of another expert. See Parrish v. State, 139 Ala. 16, 36 So. 1012 (1904).
“While expert witnesses may base their opinions on facts testified to by another expert, witnesses may not take into consideration, as part of the facts to be reviewed by them in the formation of an inference and conclusion in response to a hypothetical question, the opinion of another expert on all or some of the relevant facts.” 31A Am.Jur.2d 3105 (1989).
Our Supreme Court in Salotti v. Seaboard Coast Line R. Co., 293 Ala. 1, 299 So.2d 695 (Ala.1974), faced a situation where the trial court disallowed the opinion of an expert when it was based on conclusions and opinions of another expert. The Supreme Court upheld the lower court’s judgment, citing the following decisions:
“ ‘It is not permissible for a medical expert to express an opinion predicated on the testimony of other doctors, which contains much of fact and much of opinion. Com. v. Marshall (1926) 287 Pa. 512, 135 A. 301.’ (98 A.L.R. 1110)
“ ‘The opinions of other witnesses do not constitute a legitimate element of the basis of the opinion of an expert witness. Crozier v. Minneapolis Street R. Co. (1908) 106 Minn. 77, 118 N.W. 256.
[[Image here]]
“ ‘A medical expert cannot express an opinion based on the opinion of another expert. Foster v. Dickerson (1891) 64 Vt. 233, 24 A. 253 (dictum).’ (98 A.L.R. 1111)”
Salotti, 293 Ala. at 24, 299 So.2d at 716 (for a thorough discussion, see Annot., 56 A.L.R. 3d 300 (1974).
This standard was also applied in the recent case of Wesley v. State, 575 So.2d 108 (Ala.Cr.App.1989). Judge Bowen, writing for this court, stated as follows:
“ ‘[T]he unsworn opinion of a physician, like [that of] any other expert, is mere hearsay. The proper way of proving the result of [an expert’s] examination [is] to examine [the expert] as a witness.’ Taylor v. Atlantic Coast Line Railroad, 232 Ala. 378, 381, 168 So. 181 (1936). An expert witness cannot testify to information obtained from a non-witness expert *354 where that information is not in evidence. See Clark v. Hudson, 265 Ala. 630, 635, 93 So.2d 138 (1956); Prince v. Lowe, 263 Ala. 410, 413-16, 82 So.2d 606 (1955). ‘There is no more reason for permitting the unsworn assertions of experts to be detailed second-handed in court than the like testimony of other persons. Each is equally hearsay, within the strictest meaning of the term.’ Hussey v. State, 87 Ala. 121, 134, 6 So. 420, 425 (1989). See also Wang v. Bolivia Lumber Co., 516 So.2d 521, 523 (Ala. 1987); Central of Georgia Railway v. Reeves, 288 Ala. 121, 122-24, 257 So.2d 839, 841-42 (1972); Brackin v. State, 417 So.2d 602, 605-06 (Ala.Cr.App.1982). ‘[E]xpert witnesses, even physicians, cannot testify to the opinions of others in giving their opinions.’ Carroll v. State, 370 So.2d 749, 758 (Ala.Cr.App.), cert. denied, 370 So.2d 761 (Ala.1979).”
Dr. Paredes’s conclusion as to the cause of Mary Bailey’s death was based on an autopsy report containing the conclusions and/or opinions of another expert. Such a procedure is impermissible.
Based on the foregoing, the judgment of the circuit court is reversed and the case remanded for a new trial.
REVERSED AND REMANDED.
All the Judges concur.