## STATE v. LOUIS BOYKIN.

172 N. W. (2d) 754.

December 5, 1969—No. 41983.

John S. Connolly, for appellant.

Douglas M. Head, Attorney General, William B. Randall, County Attorney, and Gary Fridell, Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Nelson, Sheran, Peterson, and Frank T. Gallagher, JJ.

FRANK T. GALLAGHER, JUSTICE.

Defendant was found guilty of receiving stolen property. He appeals from the judgment of conviction.

Pursuant to a search warrant which authorized a search for a Whirlpool dryer that had been stolen from the Northern States Power Company, two St. Paul police officers arrived at the Bar-B-Q-King Restaurant, operated by defendant, Louis Boykin. They asked him whether he was the owner and he replied that he ran the restaurant. Sergeant Floyd Baker gave defendant a copy of the search warrant and had defendant accompany him while he searched the basement. When defendant and Sergeant Baker returned upstairs, Detective Gustav Johnson told Sergeant Baker that the stolen dryer was in the corner of the kitchen. Defendant was then placed under arrest and advised of his Miranda rights.

On appeal defendant has raised a number of objections to his conviction. All are without merit.

1. First, defendant contends that he should have been given a warning of his rights as required by Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. ed. (2d) 694, before the officers served the search warrant. He maintains that he was not free to go and that the proceedings had reached the accusatory stage.

When the officers entered the restaurant, they went through the dining area and saw defendant in a back room. Sergeant Baker said to defendant, "Louis, we have got a search warrant to search your place here. Are you the owner?" He replied, "yes, I run the place." Sergeant Baker said he then gave defendant a copy of the search warrant. Detective Johnson testified that he was not certain whether Sergeant Baker asked defendant if he were the owner before giving him a copy of the search warrant. From this evidence the trial court could properly conclude that the question was asked pursuant to service of the search warrant.

This one question is the only instance defendant cites of alleged improper questioning before he was given the Miranda warning. It was a proper part of the prescribed procedure for serving a search warrant. Minn. St. 626.16. Miranda requires that the defendant be warned of his rights before police officers begin custodial interrogation, which is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona, 384 U. S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. ed. (2d) 694, 706. To say that defendant had been deprived of his freedom of action in any significant way at this point and that this is the type of custodial interrogation with which the Miranda case is concerned would be to extend Miranda too far. Defendant could be asked if he were the owner when being served with a search warrant, without being first advised of his Miranda rights.

2. Next, defendant contends that the evidence was not sufficient to support the conviction. The state must prove that defendant intentionally received stolen property, as required by Minn. St. 609.53, and defendant claims that this knowledge or intent was not proved. However, the record satisfies us that it was.

Defendant's lack of a satisfactory explanation for his possession of the stolen property is evidence that he knew it was stolen. This alone is enough evidence to take the issue to the jury. Many courts have so held many times. E. g., State v. Monroe, 142 Minn. 394, 397, 172 N. W. 313, 314; United States v. Minieri (2 Cir.) 303 F. (2d) 550; Pearson v. United States (6 Cir.) 192 F. (2d) 681.

When the dryer was in the restaurant defendant told Miss Janine Evans, an employee, to cover the dryer with newspapers and asked her to call Northern States Power Company to find out the price, since he intended to sell it. These facts also indicate that he knew it was stolen.

3. Defendant claims that Miss Evans was an accomplice and

that her testimony was not corroborated. According to State v. Smith, 264 Minn. 307, 119 N. W. (2d) 838, an accomplice is one who cooperates, aids, or assists another in the commission of a crime, either as principal or as accessory. We do not believe that the mere placing of the newspapers over the dryer was enough to make Miss Evans an accomplice under the record here. In any event, defendant waived his right to a jury instruction that if Miss Evans were an accomplice her testimony must be corroborated. He did not ask the trial court for such an instruction and did not take exception to the instructions given. This failure waives the right to object on appeal. State v. Taylor, 270 Minn. 333, 133 N. W. (2d) 828.

4. Defendant contends that he was not given the necessary latitude to cross-examine Miss Evans. He tried to impeach her by inquiring about prior arrests. The trial court was correct in not allowing this method of impeachment. Only convictions may be used for impeachment. Minn. St. 595.07; State v. Currie, 267 Minn. 294, 126 N. W. (2d) 389. There is nothing in the record to show that the trial court refused to allow any actual convictions into evidence.

Defendant claims he should have been allowed especially wide latitude since Miss Evans was an accomplice. Even if she were an accomplice, the special consideration given would be to allow him to show any inducements given her to testify, and defendant thoroughly went into all possibilities of inducement.

5. Sergeant Baker testified that after defendant was given his Miranda warning he was asked whether he wanted to say anything about the dryer and defendant said that he did not, but that he wanted to call his lawyer. Defendant objected to the admission of this statement, claiming it was hearsay. The court admitted the testimony under the res gestae exception.

The statement was not hearsay, since it was not offered for the truth of the matter asserted. It was offered only to show that defendant said it. This testimony had little, if any, probative value, but it was not prejudicial.

6. Defendant claims that crimes other than those listed in the so-called Spreigl notice[1] were admitted into evidence over his objection. This is not correct.

First, defendant claims that the state tried to show that he burglarized Miss Evans' apartment. According to the record, defendant purchased a stolen Zenith TV and Miss Evans kept it in her apartment. Her apartment was then burglarized. The police found the stolen TV in defendant's apartment. The state did not attempt to show that defendant stole the TV from Miss Evans, but merely wanted to show the TV's whereabouts between the time defendant purchased it and the police seized it. Whatever inference there was that defendant may have burglarized Miss Evans' apartment was not sufficiently prejudicial to justify a new trial.

The second crime alleged to have been admitted erroneously concerns Detective Johnson's inadvertent mention of a gun named in the search warrant. The state had been forbidden to go into the matter of this gun. As soon as the gun was mentioned, the testimony was stopped. The jury could not see what connection it had with anything. It was not discussed again; thus, there was no prejudice.

7. The state introduced evidence that defendant possessed the stolen Zenith TV. Defendant objects to admission of this crime. The state argues that his possession of the Zenith TV is part of a common scheme or plan and that evidence of that crime is therefore admissible. It is doubtful that there is enough evidence of a common scheme or plan to make the evidence admissible on this ground.

However, when knowledge or intent is an element of the crime, other crimes may be admitted to prove knowledge or intent of the accused. State v. Hines, 270 Minn. 30, 133 N. W. (2d) 371; State v. Jansen, 207 Minn. 250, 290 N. W. 557; State v. Gifis, 195 Minn. 276, 262 N. W. 637. By showing that defendant had a

[1] See, State v. Spreigl, 272 Minn. 488, 139 N. W. (2d) 167.

stolen TV, the state makes it difficult for him to argue that he did not know the dryer was stolen also. It may be possible to be unaware that one has one stolen item; but when he has two stolen items, it is harder to argue that he does not know what is happening.

8. Defendant argues that the totality of the circumstances amounted to a cumulative prejudice that entitles him to a new trial. We cannot agree. Rather, it appears that the only possible errors were the mention of a burglary of Miss Evans' apartment and the mention of a gun named in the search warrant. These were not substantial and not prejudicial.

The judgment is affirmed.